1

2                        UNITED STATES DISTRICT COURT

3                       CENTRAL DISTRICT OF CALIFORNIA

4                              WESTERN DIVISION

5

6

UNITED STATES OF AMERICA,          )
7                                  )
                                   )
8            PLAINTIFF,            )
                                   )
9              V.                  )
                                   )   21-MJ-03395
10                                 )
                                   )   LOS ANGELES, CALIFORNIA
11  MATTHEW NICHOLAS GRIMES,       )
                                   )   JULY 20, 2021
12                                 )
                                   )   (3:22 P.M. TO 3:49 P.M.)
13           DEFENDANT.            )
    _____)

14

15                  INITIAL APPEARANCE/DETENTION HEARING

16            BEFORE THE HONORABLE PATRICIA DONAHUE
                   UNITED STATES MAGISTRATE JUDGE

17

18    APPEARANCES:              SEE NEXT PAGE

19    COURT REPORTER:           RECORDED; COURTSMART

20    COURTROOM DEPUTY:         ISABEL MARTINEZ

21    TRANSCRIBER:              DOROTHY BABYKIN
                                COURTHOUSE SERVICES
22                              1218 VALEBROOK PLACE
                                GLENDORA, CALIFORNIA  91740
23                              (626) 963-0566

24

25    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
      TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

2

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF UNITED STATES OF AMERICA:

 3           TRACY WILKISON, ACTING
             UNITED STATES ATTORNEY
 4           BRANDON FOX
             CHIEF, CRIMINAL DIVISION
 5           ASSISTANT UNITED STATES ATTORNEY
             BY:  MACK JENKINS
 6           ASSISTANT UNITED STATES ATTORNEY
             312 NORTH SPRING STREET
 7           LOS ANGELES, CALIFORNIA  90012

 8           UNITED STATES ATTORNEY'S OFFICE
             EASTERN DISTRICT OF NEW YORK
 9           BY:  NATHAN REILLY
             ASSISTANT UNITED STATES ATTORNEY
10           27IA CADMAN PLAZA
             EAST BROOKLYN, NEW YORK  11201
11           (VIRTUALLY)

12
     FOR THE DEFENDANT MATTHEW NICHOLAS GRIMES:
13
             THE FREEDMAN FIRM
14           BY:  MICHAEL GREGORY FREEDMAN
                  ATTORNEY AT LAW
15           800 WILSHIRE BOULEVARD
             SUITE 1050
16           LOS ANGELES, CALIFORNIA  90017

17           MICHAEL SCHWARTZ
             ATTORNEY AT LAW
18           BOIES SCHILLER FLEXNER

19           JOHN CESARO
             ATTORNEY AT LAW
20           BOIES SCHILLER FLEXNER

21

22

23

24

25
```

3

1                               I N D E X

2    21-MJ-03395                                    JULY 20, 2021

3
     PROCEEDINGS:   INITIAL APPEARANCE ON INDICTMENT/DETENTION
4                   HEARING

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
1              LOS ANGELES, CALIFORNIA; JULY 20, 2021; 3:22 P.M.

2              THE CLERK:  CALLING CASE NUMBER 21-MJ-3395, UNITED

3    STATES VERSUS MATTHEW NICHOLAS GRIMES.

4              COUNSEL, PLEASE STATE YOUR APPEARANCES STARTING WITH

5    PLAINTIFF.

6              MR. JENKINS:  GOOD AFTERNOON, YOUR HONOR.

7              MACK JENKINS ON BEHALF OF THE UNITED STATES.

8              AND IS THE COURT OKAY IF I REMOVE MY MASK FOR

9    PURPOSES OF ARGUMENT?

10             THE COURT:  YES, THAT'S FINE.

11             MR. JENKINS:  THANK YOU.

12             MR. REILLY:  YOUR HONOR -- I'M SORRY, YOUR HONOR.

13             ALSO PRESENT FROM THE U.S. ATTORNEY'S OFFICE IN

14   BROOKLYN IS NATHAN REILLY.

15             THE COURT:  I'M SORRY, COUNSEL.  I DIDN'T QUITE HEAR

16   THAT.

17             NATHAN REILLY YOU SAID?

18             MR. REILLY:  YES, YOUR HONOR.  R-E-I-L-L-Y.

19             THE COURT:  GOOD AFTERNOON, MR. REILLY.

20             MR. FREEDMAN:  GOOD AFTERNOON, YOUR HONOR.

21             MR. REILLY:  GOOD AFTERNOON, YOUR HONOR.

22             MR. FREEDMAN:  MICHAEL FREEDMAN APPEARING FOR THE

23   DEFENDANT MATTHEW GRIMES.

24             HE'S ALSO BEING REPRESENTED BY JOHN CESARO AND

25   MATTHEW SCHWARTZ OF BOIES SCHILLER FLEXNER.
```

1            THE COURT:  GOOD AFTERNOON, MR. FREEDMAN.

2            AND MR. GRIMES IS APPEARING BY VIDEO CONFERENCE.

3            IS THAT CORRECT?

4            MR. FREEDMAN:  YES, HE IS, YOUR HONOR.

5            THE COURT:  ALL RIGHT.

6            GOOD AFTERNOON, MR. GRIMES.

7            CAN YOU HEAR ME?

8            THE DEFENDANT:  HELLO, YOUR HONOR.  YES, I CAN HEAR

9    YOU.  THANK YOU.

10            THE COURT:  ALL RIGHT.  IF AT ANY POINT DURING THIS

11    PROCEEDINGS YOU CANNOT HEAR WHAT I AM SAYING, PLEASE SPEAK UP

12    RIGHT AWAY.

13            OKAY?

14            THE DEFENDANT:  YES, YOUR HONOR.

15            THANK YOU.

16            THE COURT:  WE ARE HERE FOR AN INITIAL APPEARANCE ON

17    AN INDICTMENT -- (MIC OFF.)

18            IS MATTHEW GRIMES YOUR TRUE AND CORRECT NAME?

19            THE DEFENDANT:  YES, YOUR HONOR.

20            THE COURT:  ALL RIGHT.

21            AND, MR. GRIMES, DID YOU -- DID YOU AGREE TO APPEAR

22    BEFORE THE COURT BY VIDEO CONFERENCE TODAY AND TO GIVE UP YOUR

23    RIGHT TO BE PRESENT IN THE COURTROOM?

24            THE DEFENDANT:  YES, YOUR HONOR.

25            THE COURT:  DID YOU DISCUSS WITH YOUR ATTORNEY YOUR

6

1  RIGHT TO BE PRESENT IN COURT AND YOUR DECISION TO GIVE UP THAT

2  RIGHT?

3           THE DEFENDANT:  YES, YOUR HONOR.

4           THE COURT:  DID YOU AUTHORIZE YOUR ATTORNEY MR.

5  FREEDMAN TO SIGN ON YOUR BEHALF THE FORM CONSENTING TO APPEAR

6  BY VIDEO CONFERENCE?

7           THE DEFENDANT:  YES, YOUR HONOR.

8           THE COURT:  ALL RIGHT.

9           AND MR. FREEDMAN, DID YOU DISCUSS WITH YOUR CLIENT

10  HIS RIGHT TO APPEAR IN COURT IN PERSON AND HIS DECISION TO GIVE

11  UP THAT RIGHT?  AND DID HE AUTHORIZE YOU TO SIGN THE FORM

12  CONSENT ON HIS BEHALF?

13           MR. FREEDMAN:  YES, YOUR HONOR.

14           THE COURT:  ALL RIGHT.

15           THE COURT ACCEPTS THE CONSENT TO VIDEO CONFERENCE AND

16  ORDERS THAT IT BE FILED.

17           THE COURT HAS ALSO RECEIVED MR. GRIMES' FORM

18  ADVISEMENT OF DEFENDANT'S STATUTORY AND CONSTITUTIONAL RIGHTS.

19  THIS FORM STATES THAT YOUR RIGHTS HAVE BEEN EXPLAINED TO YOU

20  AND THAT YOU UNDERSTAND THEM.

21           DID MR. FREEDMAN READ AND EXPLAIN TO YOU YOUR RIGHTS

22  IN THIS CASE?

23           THE DEFENDANT:  YES, YOUR HONOR.

24           THE COURT:  AND DID YOU AUTHORIZE HIM TO SIGN ON YOUR

25  BEHALF THIS FORM, ADVISEMENT OF DEFENDANT'S RIGHTS?

1           THE DEFENDANT:  YES, YOUR HONOR.

2           THE COURT:  DO YOU UNDERSTAND YOUR RIGHTS?

3           THE DEFENDANT:  YES, YOUR HONOR.

4           THE COURT:  WOULD YOU LIKE TO HAVE THEM READ FOR YOU

5   AGAIN HERE IN COURT?

6           THE DEFENDANT:  I UNDERSTAND MY RIGHTS, YOUR HONOR.

7   THANK YOU FOR OFFERING.

8           THE COURT:  ALL RIGHT.

9           AND, MR. FREEDMAN, DID YOU READ AND EXPLAIN TO YOUR

10  CLIENT HIS RIGHTS IN THIS CASE?

11          MR. FREEDMAN:  YES, YOUR HONOR.

12          THE COURT:  AND ARE YOU SATISFIED THAT HE UNDERSTANDS

13  HIS RIGHTS?

14          MR. FREEDMAN:  I AM.

15          THE COURT:  ALL RIGHT.

16          THE COURT ACCEPTS THE ADVISEMENT OF RIGHTS AND ORDERS

17  THAT IT BE FILED.

18          MR. GRIMES, AS I STATED EARLIER, YOU ARE CHARGED IN

19  AN INDICTMENT THAT WAS RETURNED IN THE EASTERN DISTRICT OF NEW

20  YORK.

21          HAVE YOU RECEIVED A COPY OF THIS INDICTMENT?

22          THE DEFENDANT:  MY LAWYER SHOWED ME A COPY OF THE

23  INDICTMENT, YOUR HONOR.

24          THE CUORT:  ALL RIGHT.

25          AND DID YOUR LAWYER READ THE INDICTMENT TO YOU?

8

1                    THE DEFENDANT:  YES, YOUR HONOR.

2                    THE COURT:  ALL RIGHT.

3                    AND WOULD YOU LIKE TO HAVE THE INDICTMENT READ OR

4     SUMMARIZED FOR YOU HERE IN COURT?

5                    THE DEFENDANT:  NO, YOUR HONOR.  THANK YOU.

6                    THE COURT:  ALL RIGHT.

7                    AND I'M NOT ASKING YOU TO ADMIT OR DENY THE TRUTH OF

8     ANY OF THE CHARGES IN THE INDICTMENT, BUT I AM ASKING YOU THIS.

9                    DO YOU UNDERSTAND WHAT IT IS THAT THE GOVERNMENT

10    CLAIMS THAT YOU DID?

11                   THE DEFENDANT:  YES, I UNDERSTAND, YOUR HONOR.

12                   THE COURT:  ALL RIGHT.

13                   THIS IS A CRIMINAL CASE.  THE "DUE PROCESS

14    PROTECTIONS ACT" APPLIES.  IT STATES AS FOLLOWS:

15                   "IN ALL CRIMINAL PROCEEDINGS THE PROSECUTOR IS

16                    ORDERED TO COMPLY WITH THE DISCOVERY OBLIGATIONS

17                    UNDER BRADY V. MARYLAND AND ITS PROGENY AND IS

18                    REMINDED OF THE POSSIBLE CONSEQUENCES OF NOT DOING

19                    SO, INCLUDING EXCLUSION OF EVIDENCE, ADVERSE JURY

20                    INSTRUCTIONS, DISMISSAL OF CHARGES, CONTEMPT,

21                    REFERRAL TO A DISCIPLINARY AUTHORITY AND SANCTIONS."

22                   AND THE COURT ORDERS THE GOVERNMENT TO COMPLY WITH

23    THE "DUE PROCESS PROTECTIONS ACT" IN THIS CASE.

24                   THIS CASE IS AN OUT-OF-DISTRICT CASE.

25                   THE COURT HAS RECEIVED A FORM "WAIVER OF RIGHTS IN

9

1  OUT-OF-DISTRICT CASES."

2         MR. GRIMES, DID YOU DISCUSS WITH YOUR ATTORNEY YOUR

3  RIGHT TO HAVE AN IDENTITY HEARING AND YOUR RIGHT TO THE ARRIVAL

4  OF PROCESS AND YOUR DECISION TO GIVE UP THOSE RIGHTS?

5         THE DEFENDANT:  YES, YOUR HONOR.

6         THE COURT:  AND DO YOU UNDERSTAND THAT -- WHAT AN

7  IDENTITY HEARING IS IS ESSENTIALLY IT WOULD REQUIRE THE

8  GOVERNMENT TO PROVE THAT YOU ARE THE PERSON WHO IS CHARGED IN

9  THE INDICTMENT THAT WAS RETURNED IN NEW YORK.

10        DO YOU UNDERSTAND THAT?

11        THE DEFENDANT:  YES, YOUR HONOR.

12        THE COURT:  ALL RIGHT.

13        AND YOU'RE GIVING UP THAT RIGHT?

14        THE DEFENDANT:  YES, YOUR HONOR.

15        THE COURT:  ALL RIGHT.

16        AND, MR. FREEDMAN, ARE YOU SATISFIED THAT YOUR CLIENT

17  UNDERSTANDS THESE RIGHTS, AND THAT HIS WAIVER OF THEM IS

18  KNOWING AND VOLUNTARY?

19        MR. FREEDMAN:  YES, YOUR HONOR.

20        THE COURT:  ALL RIGHT.

21        THE COURT ACCEPTS THE WAIVER OF RIGHTS IN

22  OUT-OF-DISTRICT CASES.

23        I'M SIGNING IT AND ORDERING THAT IT BE FILED.

24        ALL RIGHT.

25        I HAVE RECEIVED AND REVIEWED THE INDICTMENT IN THIS

10

1   CASE, ALSO, THE GOVERNMENT'S NOTICE OF REQUEST FOR DETENTION

2   INCLUDING THE EXHIBIT WITH INFORMATION PROVIDED BY THE UNITED

3   STATES ATTORNEY'S OFFICE IN THE EASTERN DISTRICT OF NEW YORK.

4           AND I'VE ALSO REVIEWED THE REPORT AND RECOMMENDATION

5   OF THE PRETRIAL SERVICES AGENCY.

6           IS THE GOVERNMENT PREPARED TO PROCEED WITH A

7   DETENTION HEARING TODAY?

8           MR. JENKINS:  YES, YOUR HONOR.

9           THE COURT:  IS THE DEFENSE PREPARED TO GO FORWARD

10  TODAY?

11          MR. FREEDMAN:  YES, YOUR HONOR.

12          THE COURT:  ALL RIGHT.

13          DOES THE GOVERNMENT HAVE ANYTHING TO PROFFER IN

14  ADDITION TO THE ITEMS THAT I ALREADY MENTIONED?

15          MR. JENKINS:  NO, YOUR HONOR.  EXCEPT TO ADD THAT

16  VIRTUALLY APPEARING AS HE NOTED IS THE LEAD PROSECUTOR FROM THE

17  EASTERN DISTRICT OF NEW YORK, MR. NATHAN REILLY.

18          SO, WHILE I WILL ARGUE IF THE COURT HAS SPECIFIC

19  QUESTIONS, I'LL JUST APPRISE THE COURT THAT MR. REILLY WILL BE

20  PREPARED TO ANSWER THEM IF THE COURT SO WISHES.

21          THE COURT:  OKAY.  THANK YOU.

22          ALL RIGHT.

23          THEN, THE GOVERNMENT MAY PROCEED.

24          MR. JENKINS:  THANK YOU, YOUR HONOR.

25          IN SUPPORT OF THE GOVERNMENT'S REQUEST FOR DETENTION,

1   THE GOVERNMENT PROFFERS THE INDICTMENT, THE PRETRIAL SERVICES

2   REPORT, BUT NOT ITS CURRENT RECOMMENDATION, AND AS NOTED, THE

3   NOTICE OF REQUEST FOR DETENTION AND EXHIBIT A.

4        IN SUPPORT OF THE REQUEST FOR DETENTION, AS THE

5   EXHIBIT A POINTED OUT, WE DO BELIEVE AT SOME POINT THIS IS A

6   BONDABLE CASE.  JUST AT PRESENT THE CURRENT OFFERED TERMS,

7   ALTHOUGH GETTING CLOSER, ARE NOT YET SUFFICIENT TO SATISFY THE

8   GOVERNMENT'S INTEREST IN INSURING THE DEFENDANT'S APPEARANCE.

9        SO, MR. FREEDMAN AND MYSELF AND MR. FREEDMAN AND MR.

10   REILLY HAVE BEEN ENGAGED IN THOSE DISCUSSIONS.

11        AND I WILL LET MR. FREEDMAN ARTICULATE HIS CURRENT

12   POSITION.  BUT HE IS AWARE THAT AT THIS POINT THE GOVERNMENT

13   FEELS IT IS INSUFFICIENT.  AND I'M PREPARED TO ARGUE.

14        BUT ON THE HIGHLIGHT LEVEL IS THIS, DEFENDANT, MR.

15   GRIMES, HIS -- THE CRIMES CHARGED -- 951 IS A VERY INFREQUENTLY

16   USED STATUTE.  IT IS ACTING AS A GOVERNMENT AGENT FOR A FOREIGN

17   GOVERNMENT.  THAT IS SIGNIFICANT TO A BOND ARGUMENT BECAUSE IN

18   THE FEW CASES THAT THIS AUSA HAS SEEN, THE RELATIONSHIP BETWEEN

19   THE FOREIGN GOVERNMENT AND OUR GOVERNMENT ARE OFTEN AT LOWER

20   LEVELS -- MEANING IT'S AN ASSISTANT REACHING OUT TO A

21   CONSULTANT, WHICH MAKES IT LESS PERNICIOUS BUT STILL ILLEGAL.

22        HERE, THE GOVERNMENT WOULD EMPHASIZE THAT IT WOULD BE

23   HIGHEST LEVELS OF THE U.S. GOVERNMENT THAT THIS DEFENDANT WAS

24   HELPING HIS CODEFENDANT REACH OUT TO AN INFLUENCE ON BEHALF OF

25   THE UAE AT ITS HIGHEST LEVELS.

1    SO, WE ARE TALKING ABOUT THE HIGHEST LEVELS FROM UAE

2    TO THE HIGHEST LEVELS OF THE UNITED STATES AND BEING PAID --

3    BEING -- OPERATING ON BEHALF OF THAT GOVERNMENT, WHILE NOT ONLY

4    NOT DISCLOSING IT, BUT ACTIVELY CONCEALING IT.

5        SO, HERE THE QUESTION BEING WHETHER THIS DEFENDANT

6    REPRESENTS A FLIGHT RISK.  THE FACT THAT A HIGH-LEVEL FOREIGN

7    GOVERNMENT ENTITY WOULD BENEFIT BY THIS DEFENDANT'S FLIGHT

8    ALONG WITH HIS CODEFENDANT ESCALATES THE CONCERN ON THE

9    GOVERNMENT'S BEHALF.

10        AGAIN, THERE ARE APPROPRIATE CONDITIONS, BUT WE WOULD

11   ASK THAT THEY BE STRINGENT CONDITIONS, BOTH TEMPORALLY AND

12   GEOGRAPHICALLY AS WELL AS FINANCIALLY, TO INSURE THAT THIS

13   DEFENDANT DOES NOT EVADE JUSTICE.

14        AND THE LAST POINT I WILL HIGHLIGHT ON THAT -- (AUDIO

15   SKIPPING.) -- AS NOTED IN THE LETTER THIS IS NOT A HYPOTHETICAL

16   CONCERN.  THE LEAD DEFENDANT IN THIS CASE WAS INTERVIEWED BY

17   THE FBI IN 2018 RELATED TO THE CONDUCT THAT MR. GRIMES AND HIS

18   CODEFENDANT ARE CHARGED FOR NOW.  THREE DAYS AFTER THAT

19   INTERVIEW THAT TOOK PLACE IN LOS ANGELES THAT DEFENDANT, THE

20   LEAD DEFENDANT, FLED THE UNITED STATES AND HAS NOT RETURNED

21   SINCE.

22        SO, AGAIN, THE GOVERNMENT WOULD ARGUE THAT HIGHLIGHTS

23   THE SIGNIFICANCE OF THE CHARGES HERE, THAT AN INDIVIDUAL LIKE

24   THAT WOULD FLEE IMMEDIATELY.  AND I THINK THAT AGAIN BUTTRESSES

25   THE GOVERNMENT'S CONCERN ON FLIGHT HERE, YOUR HONOR.

1                  THE COURT:  ALL RIGHT.

2                  AND JUST SO I'M CLEAR, THE DEFENSE HAS PROPOSED A

3    BOND WHICH THE GOVERNMENT CURRENTLY DEEMS INSUFFICIENT TO

4    ADDRESS THE RISK OF FLIGHT.

5                  IS THAT RIGHT?

6                  MR. JENKINS:  YES.

7                  AND REALLY BRIEFLY, PART OF THE CONCERN IS THAT THE

8    GOVERNMENT WOULD NEED TIME TO EVALUATE AND VET THE PROPOSED

9    SURETIES.  SO, THERE'S BOTH THE SORT OF QUANTITATIVE ASPECT,

10   WHICH THE GOVERNMENT BELIEVES IS INSUFFICIENT, AND THERE'S ALSO

11   THE QUALITATIVE ASPECT OF THE UNDERLYING SOURCES WHICH THE

12   GOVERNMENT WILL NEED TIME TO EVALUATE.

13                 THE COURT:  OKAY.

14                 MR. JENKINS:  THANK YOU, YOUR HONOR.

15                 THE COURT:  ALL RIGHT.  THANK YOU.

16                 ALL RIGHT.  MR. FREEDMAN.

17                 MR. FREEDMAN:  YES, YOUR HONOR.

18                 I'M GOING TO FOCUS MY ARGUMENTS ON THE CONDITIONS.

19   BUT JUST TO BRIEFLY DISCUSS THE FLIGHT RISK FIRST.

20                 AS MR. JENKINS MENTIONED, THERE'S TWO OTHER

21   DEFENDANTS WHO ARE INCLUDED IN THE INDICTMENT.  AND AT LEAST

22   UPON MY FIRST REVIEW OF THE INDICTMENT WITH MY CLIENT, HE IS A

23   FAIRLY LOW-LEVEL INDIVIDUAL IN ALL OF THIS, NOT TO DOWNPLAY THE

24   SERIOUSNESS OF THE CHARGES.  BUT HE'S A YOUNG MAN.  HE'S 27

25   YEARS OLD.  HE HAS NO CRIMINAL HISTORY.  HE NO LONGER WORKS AT

14

1   THE COMPANY.

2           WHATEVER ACCESS HE IS ALLEGED TO HAVE ONCE HAD TO THE

3   COMPANY OR ITS RESOURCES IS NOW DONE.

4           AND THERE'S AN ALLEGATION OF THE COMPANY HAVING A

5   PLANE, WHICH, FIRST OF ALL, HE DOESN'T HAVE ACCESS TO ANYMORE.

6   AND AS I UNDERSTAND IT, THE COMPANY DOESN'T EVEN HAVE.

7           HE -- WITH RESPECT TO FLIGHT RISK AS WELL, THIS

8   DEFENDANT, MY CLIENT, HAS BEEN AWARE OF THE FACTUAL ALLEGATIONS

9   LEADING TO THIS CASE TODAY FOR A NUMBER OF YEARS.

10          SO, AS IN MANY CASES, HE'S KNOWN THAT THERE WAS RISK.

11  AND IF HE WAS A FLIGHT RISK -- AS MR. JENKINS NOTED, ONE OF THE

12  DEFENDANTS IN THIS CASE DID IN FACT FLEE.  MY CLIENT DID NOT

13  FLEE.

14          SO, THE FLIGHT RISK HAS ALREADY BEEN PROVEN TO BE

15  MINIMAL AS TO THIS DEFENDANT.

16          NOW, WE'VE BEEN ENGAGED WITH THE GOVERNMENT BOTH HERE

17  AND IN NEW YORK ALL DAY.  AND ESSENTIALLY WHAT IT BOILS DOWN TO

18  IS WE DON'T HAVE ANY OPPOSITION TO A SECURED BOND.

19          BASED ON MY EXPERIENCE, AT LEAST RECENTLY, ESPECIALLY

20  WITH THE PANDEMIC, THE AMOUNT OF TIME THAT'S GOING TO BE

21  REQUIRED FOR A SECURED BOND TO BE RECORDED WITH THE COUNTY AND

22  POSTED COULD BE 30 TO 60 DAYS.

23          SO, I THINK WORKING BACKWARDS FROM EVENTUALLY HAVING

24  A SECURED PROPERTY -- WE'LL HAVE A PROPERTY TO PROPOSE TO THE

25  GOVERNMENT LATER TODAY OR TOMORROW.  WE HAVE THE DEFENDANT'S

1    FATHER OWNS A HOME IN SANTA BARBARA THAT I BELIEVE HAS

2    SUFFICIENT EQUITY TO SATISFY THE GOVERNMENT.  HE'S ALREADY

3    GETTING THE DEED AND THE MORTGAGE TODAY.  WE CAN GET IT

4    APPRAISED BY TOMORROW.

5         I DON'T -- I DON'T THINK THE ISSUE IS REALLY GOING TO

6    BE THE NUMBER OF THE AMOUNT OF EQUITY THAT'S DEEDED OVER.  I

7    THINK IT'S GOING TO BE THE GOVERNMENT JUST ASSURING ITSELF THAT

8    THAT PROPERTY IS SUFFICIENT FOR ITS CONCERNS AS WELL AS THE

9    FAMILY WHO'S PUTTING IT UP.

10        ONCE THAT'S ESSENTIALLY AGREED UPON, WE'RE STILL

11   GOING TO BE SEEKING TO HAVE THE DEFENDANT RELEASED ON EITHER A

12   SIGNATURE BOND OR SOME SORT OF PLACE HOLDER BOND.  AND THAT'S

13   WHERE THE PRETRIAL SERVICES (AUDIO INTERRUPTION) AT THIS POINT

14   I THINK HAS IT RIGHT RECOMMENDING A 2-MILLION-DOLLAR COLLATERAL

15   BOND IN CASH OR SOME OTHER SECURITIES.

16        SO, WE THOUGHT ABOUT WHETHER IT WOULD MAKE SENSE TO

17   PUT THIS OVER FOR A FEW DAYS TO GET TIME TO ASSUAGE THE

18   GOVERNMENT'S CONCERNS AS TO THE PROPERTY.  BUT I THINK IT'S

19   RIPE FOR THE COURT TO ORDER BOND AT THIS POINT IN TIME,

20   RECOGNIZING, OF COURSE, THAT IF IT'S A SECURED PROPERTY IN THE

21   AMOUNT OF $2 MILLION, WHICH IS THE SAME AS THE COLLATERAL BOND,

22   THE GOVERNMENT IS STILL GOING TO HAVE TO APPROVE OF THAT BEFORE

23   IT'S PROPOSED TO THE COURT.  AND, SO, WE'RE NOT TRYING TO SHIRK

24   THAT PROCESS.

25        AS MR. JENKINS SAID, WE'VE -- WE'VE MORE OR LESS SORT

1    OF GOTTEN TO A FRAMEWORK.  I'M JUST SUGGESTING THAT IT'S

2    APPROPRIATE, ESPECIALLY IN LIGHT OF THE MINIMAL FLIGHT RISK

3    FACTORS THAT I'VE IDENTIFIED, TO IMPOSE THAT AS A BOND ORDER

4    NOW SO THAT WE CAN BEGIN WORKING TOWARDS THAT SPECIFIC TARGET.

5            IF IT'S GOING TO BE SECURED, THAT'S FINE.  AND WE'LL

6    BEGIN WORKING TOWARDS IT.  AND WE THINK IN THE MEANTIME THERE

7    SHOULD BE A PLACE HOLDER BOND.  IF IT'S IN THE SAME AMOUNT OF

8    $2 MILLION, THAT'S FINE.

9            AND WE ALSO HAVE NUMEROUS INDIVIDUALS, INCLUDING THE

10   DEFENDANT'S BROTHER, WHO'S IN TEXAS WHO ARE WILLING TO SIGN A

11   SIGNATURE BOND IMMEDIATELY.

12           SO, WE -- WE DO THINK WE'LL GET THERE JUST AS MR.

13   JENKINS SAID.  AND WE BELIEVE IT'S APPROPRIATE TO ENTER THAT

14   ORDER CONSISTENT WITH THE PRETRIAL REPORT AT THIS TIME.

15           THE COURT:  ALL RIGHT.

16           SO, MR. FREEDMAN, JUST SO I UNDERSTAND.

17           THE DEFENSE PROPOSAL IS THAT THE COURT SET BAIL AS

18   RECOMMENDED BY PRETRIAL SERVICES, WHICH IS THE COLLATERAL BOND

19   IN THE AMOUNT OF $2 MILLION ALONG WITH A NUMBER OF RELEASE

20   CONDITIONS?

21           MR. FREEDMAN:  CORRECT.

22           THE COURT:  AND, THEN, YOUR PROPOSAL IS THAT THIS

23   BOND IS -- I THINK YOU SAID A PLACE HOLDER BOND -- THAT THE

24   DEFENSE IS PROPOSING WOULD BE REPLACED BY A DIFFERENT BOND

25   SUPPORTED WITH SECURITY AT A LATER DATE.

1           MR. FREEDMAN:  YES.

2           AND JUST TO CLARIFY.

3           I THINK THE PRETRIAL RECOMMENDATION IS SUFFICIENT,

4   JUST THE 2-MILLION-DOLLARS COLLATERAL BOND.  BUT I RECOGNIZE

5   THAT THE GOVERNMENT IS FIRM ON WANTING PROPERTY.

6           AND, SO, IF -- IF THE GOVERNMENT HAS CONVINCED THE

7   COURT OF THE NEED FOR THAT, THEN, WE WOULD SUGGEST THAT IT BE

8   IN THE SAME AMOUNT THAT PRETRIAL IS RECOMMENDING AS CASH.

9           AND, FURTHER, WITH RESPECT TO THE OTHER CONDITIONS I

10  FORGOT TO NOTE, I HAVE THE DEFENDANT'S PASSPORT NOW.  THE FBI

11  AGENT GAVE IT TO ME THIS MORNING.  SO, HE'S -- HE DOESN'T HAVE

12  HIS PASSPORT.

13          THE OTHER CONDITIONS THAT WOULD BE NECESSARY TO

14  ADDRESS FLIGHT CONCERNS HE'S FINE WITH AS WELL.

15          THE COURT:  ALL RIGHT.

16          MR. JENKINS, WHAT IS THE GOVERNMENT'S -- I'M NOT

17  QUITE CLEAR.  WHAT IS THE GOVERNMENT'S CURRENT POSITION WITH

18  REGARD TO THE -- I GUESS, WHAT IS IT THAT THE GOVERNMENT IS

19  ASKING? -- JUST DETENTION PENDING A BOND ON TERMS DIFFERENT

20  FROM WHAT PRETRIAL SERVICES IS PROPOSING?  OR IS THE GOVERNMENT

21  AMENABLE TO THE TERMS RECOMMENDED BY PRETRIAL SERVICES?

22          MR. JENKINS:  YES AND NO.

23          YES, WE ARE REQUESTING DETENTION ON THE CURRENT

24  RECORD.  WE DO NOT BELIEVE THE PRETRIAL SERVICES'

25  RECOMMENDATION IS SUFFICIENT.  WE BELIEVE MR. FREEDMAN'S

1    PROPOSAL IS GETTING CLOSER, ALTHOUGH NOT YET THERE.

2             IN ADDITION, I WILL NOTE, IF WHEN WE GET TO THAT, WE

3    WOULD ALSO REQUEST ADDITIONAL TERMS THAT PROBATION DID NOT

4    RECOMMEND; FOR EXAMPLE, GPS IF AND WHEN WE GET THERE.

5             I WILL -- IF THE COURT WOULD LIKE TO HEAR FROM MR.

6    REILLY ON THE SPECIFICS IN TERMS OF A NUMBER -- FOR EXAMPLE,

7    MR. FREEDMAN'S PRESENTATION PROPOSAL MAKES SENSE, BUT THERE ARE

8    SOME QUESTIONS.  FOR EXAMPLE, WHETHER THE $2 MILLION IS

9    SUFFICIENT.  AND WE DON'T HAVE ENOUGH INFORMATION ON IS THAT

10   ACCOUNT -- DOES IT HAVE $2 MILLION, WHETHER THERE'S $200

11   MILLION IN IT SUCH THAT THE $2 MILLION IS LESS OF A CONCERN.

12             THE COURT:  UH-HUH.

13             MR. JENKINS:  OR IS IT THE FULL AMOUNT.

14             IN ADDITION, IF THE DEFENDANT IS RELEASED, AND THE

15   PROPERTY, THE SORT OF BACK-UP PLAN TO REPLACE HIS PROPERTY

16   PLAN, DOES NOT COME THROUGH, IS HE REMANDED INTO CUSTODY.  AND

17   IF SO, WHEN.

18             AND, SO, THOSE ARE SOME OF THE QUESTIONS THAT I THINK

19   STILL NEED TO BE ADDRESSED.

20             AND I -- I WAS SIGNALING TO THE COURT I THINK THEY

21   ARE ADDRESSABLE WITH MR. FREEDMAN HOPEFULLY -- AND, OF COURSE,

22   IT'S UP TO YOUR HONOR.  BUT I WAS SIGNALING THAT I DO THINK

23   THIS IS NOT GOING TO BE AN INDETERMINATE DETENTION FOR THE

24   DEFENDANT.

25             THE COURT:  UH-HMM.

19

1          MR. JENKINS:  BUT WE STILL BELIEVE THAT IT'S

2    IMPORTANT FOR THE REASONS STATED.

3          THE COURT:  ALL RIGHT.

4          AS I SAID, I HAVE REVIEWED THE INDICTMENT AND THE

5    GOVERNMENT'S REQUEST FOR NOTICE OF DETENTION AND THE REPORT AND

6    RECOMMENDATION OF PRETRIAL SERVICES.

7          AND I DO FIND THAT THE DEFENDANT PRESENTS A VERY

8    SERIOUS RISK OF FLIGHT.  AND I AM INCLINED TO ORDER DETENTION

9    BASED ON RISK OF FLIGHT.

10          I BELIEVE THAT THE TERMS RECOMMENDED BY PRETRIAL

11   SERVICES ARE INSUFFICIENT TO ADDRESS -- TO MITIGATE THE FLIGHT

12   RISK.

13          HOWEVER, THERE MAY VERY WELL BE TERMS THAT WOULD --

14   THAT WOULD ADDRESS THAT RISK OF FLIGHT.

15          AND I'M NOT SURE HOW THE TIMING PLAYS IN BECAUSE I

16   KNOW WE HAVE A WAIVER OF RIGHTS.  SO, OBVIOUSLY, THE

17   DEFENDANT'S NEXT APPEARANCE IS GOING TO BE IN THE EASTERN

18   DISTRICT OF NEW YORK.

19          BUT AT THIS POINT I AM INCLINED TO ORDER DETENTION

20   PENDING -- CERTAINLY WE'LL REVIEW A STIPULATION -- A STIPULATED

21   BOND SUBMITTED BY THE PARTIES.

22          AND I WOULD STRONGLY ENCOURAGE YOU BOTH TO DO SO.

23          MR. FREEDMAN:  YOUR HONOR, WITH -- MAY I INQUIRE AS

24   TO THAT POINT?

25          THE COURT:  YES.

1          MR. FREEDMAN:  WE DO THINK THAT IT'S -- WE'RE

2    OPTIMISTIC THAT WE CAN TRY TO WORK SOMETHING OUT THIS WEEK.

3    AND IT WOULD OBVIOUSLY -- SAVES A TREMENDOUS BURDEN ON THE

4    DEFENDANT IF HE DOESN'T HAVE TO BE TRANSFERRED TO THE EASTERN

5    DISTRICT OF NEW YORK WHILE STILL IN CUSTODY.

6          SO, IF IT'S POSSIBLE, I DON'T KNOW IF THE COURT HAS

7    ANY INSIGHT INTO THE TIMING WHEN HE WOULD BE TRANSFERRED UNDER

8    THE COURT'S ORDER.  IF IT WERE GOING TO BE EARLIER THAN THE END

9    OF THIS WEEK, I GUESS WHAT I WOULD REQUEST TO DEAL WITH THAT IS

10   IF WE COULD PUT A DATE ON CALENDAR BEFORE YOUR HONOR IN THE

11   HOPES THAT WE WOULD REACH THAT STIPULATION BY THE END OF THE

12   WEEK, EITHER THURSDAY OR FRIDAY.  ESSENTIALLY CONTINUE THIS

13   HEARING SO THAT THE (AUDIO INTERRUPTION) DETENTION AND TRANSFER

14   TO NEW YORK DOESN'T TAKE EFFECT BEFORE THE END OF THIS WEEK.

15          THE COURT:  CERTAINLY.

16          WHAT IS THE GOVERNMENT'S POSITION?

17          MR. JENKINS:  OUR POSITION IS THAT I THINK THAT'S

18   POSSIBLE, MEANING THAT THAT WOULD BUY THE DEFENDANT TIME IN

19   SHORT.

20          WE WOULD JUST ECHO -- AND I'M NOW CITING THE COURT'S

21   VIEW -- THAT A LOT NEEDS TO GET DONE IN THOSE FEW DAYS.

22          SO, I DON'T KNOW IF IT MAKES SENSE TO SET IT FOR NEXT

23   WEEK TO PROVIDE MR. FREEDMAN AND HIS CLIENT AND HIS FAMILY TO

24   SATISFY WHAT THE GOVERNMENT HAS OUTLINED ARE OUR CONCERNS, AND

25   AT LEAST ON THIS COURT'S RULING, THE COURT'S CONCERNS.

1            SO, WE CAN SET IT IN A -- IT'S UP TO THE COURT -- SET

2   IT IN A COUPLE OF DAYS.  BUT I THINK THE BAR IS HIGH.  AND, SO,

3   I THINK TO SAVE EVERYONE TIME AND RESOURCES EITHER SETTING IT

4   NEXT WEEK WOULD GIVE THE DEFENDANT A BETTER CHANCE AT

5   SATISFYING AT LEAST THE GOVERNMENT'S CONCERNS.  BUT THAT'S A --

6            MR. REILLY:  YOUR HONOR --

7            (PAUSE IN PROCEEDINGS.)

8            MR. REILLY:  -- WE DON'T OBJECT TO A SHORT -- I --

9   WELL, GIVEN -- GIVEN THE NATURE --

10           THE COURT:  MR. REILLY, YOU'RE CUTTING IN AND OUT.

11  CAN YOU START OVER.

12           MR. REILLY:  SURE.  I APOLOGIZE, YOUR HONOR.

13           WE DON'T OBJECT TO A CONTINUATION FOR A SHORT PERIOD

14  OF TIME.

15           I THINK THE GOVERNMENT'S CONCERN IS OBVIOUSLY A

16  SITUATION IN WHICH THE PARTIES ARE BETWIXT AND BETWEEN.

17           BECAUSE, AS THE COURT IS AWARE, TRANSPORT AND CUSTODY

18  ITSELF CAN TAKE SOME TIME.  AND WE WANT THE DEFENDANT --

19  DEFENDANTS TO APPEAR TIME- -- IN SHORT ORDER HERE IN THE

20  EASTERN DISTRICT OF NEW YORK.

21           SO, IF THE COURT IS INCLINED TO A BRIEF CONTINUANCE

22  AS REQUESTED BY THE DEFENDANT, WE WOULD ASK THAT IT BE EITHER

23  AT THE END OF THIS WEEK OR MONDAY OR TUESDAY OF NEXT WEEK AT

24  THE LATEST BECAUSE WE DON'T -- WE DON'T WANT TO HOLD THIS

25  MATTER OPEN AND DELAY HIS APPEARANCE HERE IN NEW YORK.

1          THE COURT:  MR. REILLY, DO YOU HAVE ANY INSIGHT ON

2  HOW QUICKLY MR. GRIMES WOULD BE TRANSPORTED TO NEW YORK IN

3  CUSTODY?

4          MR. REILLY:  YOU KNOW, YOUR HONOR, I DON'T.

5          I CAN INQUIRE WITH THE MARSHALS.  I -- I HAVE SEEN --

6  I HAVE SEEN A TRANSPORT TAKE A MATTER OF DAYS AND AT OTHER

7  TIMES DEPENDING ON WHAT -- ON SORT OF WHAT THE BOP'S -- AND

8  EXCUSE ME -- AND THE MARSHALS' CAPABILITIES ARE IT CAN BE MORE

9  OF A MATTER OF, YOU KNOW, NORTH OF A WEEK.

10          BUT I CAN -- I CAN CERTAINLY COMMUNICATE WITH THE

11  MARSHALS AND SEE IF I CAN GET A MORE PRECISE ESTIMATE.  IT'S

12  BEEN HARD TO NAIL DOWN IN MY EXPERIENCE.

13          THE COURT:  ALL RIGHT.  THEN AT THE DEFENSE REQUEST,

14  I AM INCLINED TO PUT THIS MATTER OVER FOR FURTHER DISCUSSION

15  REGARDING A POTENTIAL BOND UNTIL MONDAY, JULY 26TH.

16          AND I'LL LET MY COURTROOM DEPUTY DETERMINE THE TIME.

17          (PAUSE IN PROCEEDINGS.)

18          THE COURT:  MY COURTROOM DEPUTY WILL TELL YOU THE

19  AVAILABLE TIMES ON THE 26TH.

20          THE CLERK:  IT WOULD HAVE TO BE 8:00 A.M., 10:00

21  A.M., NOON OR 2:00 P.M. BECAUSE HE IS HOUSED OR WILL BE HOUSED

22  AT SAN BERNARDINO.

23          MR. FREEDMAN:  ANY OF THOSE TIMES IS FINE WITH THE

24  DEFENSE, YOUR HONOR.

25          MR. JENKINS:  THE SAME FOR THE GOVERNMENT, YOUR

1    HONOR.

2               (PAUSE IN PROCEEDINGS.)

3               THE COURT:  ALL RIGHT.  WE'LL PUT THIS MATTER OVER

4    UNTIL JULY 26TH, 2021 AT 10:00 A.M.

5               THE COURT FINDS THAT THE DEFENDANT PRESENTS A SERIOUS

6    RISK OF FLIGHT AND ORDERS THAT HE BE DETAINED PENDING THE

7    HEARING IN THIS COURT ON JULY 26TH OF 2021.

8               AND AS HE HAS WAIVED HIS RIGHTS, HE SHOULD BE

9    TRANSPORTED TO THE EASTERN DISTRICT OF NEW YORK.

10              AND IF IT TURNS OUT THAT HE CAN BE EXPEDITIOUSLY

11   TRANSPORTED TO THE EASTERN DISTRICT OF NEW YORK BEFORE JULY

12   26TH, THEN, THE GOVERNMENT IS ORDERED TO NOTIFY THE COURT TO

13   THAT EFFECT.  AND I WOULD BE INCLINED TO LET HIM GET BACK TO

14   THE EASTERN DISTRICT OF NEW YORK AS QUICKLY AS POSSIBLE.  AND

15   I'M SURE THE COURT THERE WILL ENTERTAIN THE APPROPRIATE BOND TO

16   SET IN THIS CASE.

17              MR. JENKINS:  UNDERSTOOD, YOUR HONOR.

18              I WILL WORK WITH MR. REILLY TO LET THE COURT KNOW AT

19   THAT DIRECTION.

20              THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.

21              MR. JENKINS:  YES, YOUR HONOR.

22              THE COURT:  IS THERE ANYTHING FURTHER FROM THE

23   DEFENSE?

24              MR. FREEDMAN:  YOUR HONOR, IS THE MONDAY HEARING

25   GOING TO BE IN THIS COURTROOM OR IN YOUR HONOR'S COURTROOM?

24

1        THE COURT:  THAT'S A GOOD QUESTION.

2        (PAUSE IN PROCEEDINGS.)

3        THE COURT:  IT WILL BE IN MY COURTROOM ON THE 5TH

4   FLOOR OF THIS BUILDING.

5        MR. FREEDMAN:  THANK YOU, YOUR HONOR.

6        THE COURT:  ALL RIGHT.

7        THANK YOU, COUNSEL.

8        MR. JENKINS:  THANK YOU, YOUR HONOR.

9        (PROCEEDINGS ADJOURNED 3:49 P.M.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

1

2                        C E R T I F I C A T E

3                           DISCLAIMER

4           THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY
                  AFFECTED DUE TO MICROPHONE PROBLEMS.)
5

6

7           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
     TO THE BEST OF MY ABILITY FROM THE ELECTRONIC SOUND RECORDING
     OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
8

9

     /S/ DOROTHY BABYKIN                      7/27/21
10   _____         _____
     FEDERALLY CERTIFIED TRANSCRIBER          DATED
11   DOROTHY BABYKIN

12

13

14

15

16

17

18

19

20

21

22

23

24

25